In the Matter of the Estate of Honora Callaghan, Deceased.

*Payment of a decedent's debts out of foreclosure surplus moneys — the three years' limitation · upon sales of a decedent's real estate for payment of debts — Code of Civil Procedure,* §§ 2750, 2798.

When there is a deficiency in a decedent's personal estate, his debts and funeral expenses are entitled to be paid out of surplus moneys arising from foreclosure sales of his real estate, paid into the Surrogate's Court under section 2798 of the Code of Civil Procedure, although the three years from the date of issuance of the original letters upon the decedent's estate, within which by force of section 2750, creditors can apply to the Surrogate's Court for the sale of the decedent's real estate to pay debts, may have expired.

Appeal by Amsdell Brothers, T. C. Lyman & Co. and D. M. Koehler, creditors of Honora Callaghan, deceased, from a decree of the Surrogate's Court of Kings county, entered in the surrogate's office on the 12th day of May, 1892, distributing surplus moneys arising from foreclosure sales of said decedent's real estate.

Honora Callaghan died intestate at the city of Brooklyn, November 18, 1888, seized of certain real estate in that city. Letters of administration were granted by the surrogate of Kings county to her son, John B. Callaghan, December 3, 1888. Mortgages on the decedent's real estate were foreclosed by two actions in the City Court of Brooklyn, and after the sale thereof the surplus arising in

said actions, was, by order of said City Court, paid to and deposited with the surrogate of Kings county, November 24, 1890.

On or about March 17, 1891, Katie C. Callaghan, a daughter of decedent, filed her petition with said surrogate setting forth these facts, stating the names of the heirs of decedent, and that there were certain debts of decedent unpaid, including those of these appellants, and praying that such surplus moneys be distributed to those entitled thereto, and that a citation be issued to the parties designated in the petition.

A citation was thereupon issued to and served upon the heirs and creditors of the decedent, including these appellants, and was served on all the parties, and these appellants appeared. No answers or objections were filed to said petition, but on the return of said citation the surrogate required John B. Callaghan, the administrator, to file his accounts as such administrator, and on or about May 6, 1891, he filed an account.

To this account objections were filed and an order of reference was then made by the surrogate, to examine the account rendered by the administrator, and to take proof of the facts stated in the petition, and of the claims against or debts of the estate of Honora Callaghan, deceased, and to make report thereon.

On December 31, 1891, the referee filed his report, in which he found, among other things, that the total amount of assets of the estate of Honora Callaghan, deceased, which have come to the hands of John B. Callaghan, as administrator, is $662.04. That he expended properly $602.14, and that he has now in his hands available for the payment of debts, $59.90.

The referee also found the following to be just and valid claims against the estate :

| | |
|---|---|
| D. M. Koehler | $304 95 |
| T. C. Lyman & Co. | 116 00 |
| Amsdell Bros. | 1,103 00 |

On January 18, 1892, and before the report of the referee was considered, George M. Amsdell and Thoedore M. Amsdell, composing the firm of Amsdell Brothers, filed in the surrogate's office of Kings county a petition setting forth this debt from the estate of Honora Callaghan, and the other debts or claims reported by the

referee, and all other necessary facts, and prayed the disposition of this surplus to pay the debts of decedent, as prescribed by chapter 18, title 5 of Code of Civil Procedure, and that a citation might issue.

Thereupon the surrogate made findings sustaining the facts found by the referee, and directed the distribution of the said foreclosure surplus to the next of kin, without any payment therefrom to the creditors. From that decree the creditors appealed.

*Theo. Burgmyer*, for the appellants.

*Moffett & Kramer*, for the respondent.

PRATT, J. :

I think the learned surrogate has proceeded on an erroneous theory in this case. He has held that notwithstanding a deficiency of personal estate, the decedent's debts and funeral expenses are not payable out of surplus moneys arising from the sale of his real estate made within four years, under foreclosure, apparently on the theory that the real estate is discharged from the lien or trust for the payment of debts after the expiration of three years from the original grant of letters of administration. That is not the law, as I understand it. A creditor's right to apply to the Surrogate's Court for the sale of real estate to pay debts, etc., is now limited to three years after issuance of original letters (§ 2750), except in the case provided for in section 2751. But it by no means follows that the real estate is thereby discharged from those claims so long as it remains in the hands of legatees or heirs at law. That limitation, and the other provisions bearing on the point, were intended for the protection of *bona fide* purchasers of real estate made after the lapse of three years. (*Slocum* v. *English*, 2 Hun, 78 ; affd., 62 N. Y. 494.) The heir at law or legatee derives only an incidental benefit from this provision, that after that lapse of time, his purchaser may no longer fear unknown liens arising from decedent's debts and hesitate to buy from that cause.

Various considerations seem to me sufficient to sustain this view. An owner of property holds it primarily in trust for his creditors. (*Candee* v. *Lord*, 2 N. Y. 269.) The law respects this trust, especially for the benefit of creditors. During the lifetime of the

owner he is bound to respect it, and all his honest dealings therewith bind his creditors on the theory of privity. But even that rule is designed mainly for the protection of *bona fide* purchasers. (*Candee* v. *Lord, supra.*) At the death of the owner, the estate passes by mere succession to his legatees or heirs at law. They pay nothing therefor, and stand in the same relation to it which voluntary grantees occupy during his lifetime. A resulting trust or equitable lien arises in favor of creditors and for funeral and administration expenses. The able opinion of Mr. Justice CULLEN in *Mead* v. *Jenkins* (29 Hun, 253), shows that the remedy by sale under the authority of the surrogate was formerly limited only by reasonable lapse of time. That opinion and that of the Court of Appeals (95 N. Y. 34, 35), show that even a purchaser who bought with notice of a creditor's claim would not be protected, notwithstanding the statute of 1873 (chap. 211). He is not, in that case, a purchaser in good faith. This clearly shows that the particular limitation (§§ 2750, 2751) does not discharge the lien or trust, as against the legatee or heir at law. Indeed, nothing can accomplish a discharge of that lien or trust in his favor except payment or the Statute of Limitations. He remains liable personally for debts to the extent of the property which he receives. (Code, §§ 1837, 1843.) If he sells it to a *bona fide* purchaser after three years, the consideration received is merely substituted in place of the land, and, upon familiar principles of equity jurisprudence, may be followed, and, in such a case as this, may be taken to pay his obligation.

The provisions of the Code (§§ 2797–2799) were designed to follow this general view in cases where a surplus arises from the sale of real estate " within four years " after the issuance of original letters. (§ 2798.) Why otherwise the limit of " four years ? " The limit for the commencement of the creditor's proceeding under sections 2750, 2751, is three years. Suppose no such proceeding and a sale on foreclosure during the fourth year resulting in a surplus. It must, nevertheless, be paid into the Surrogate's Court under section 2798. To what end is this requirement except that the decedent's general creditors may be protected ? Nor is this limited to cases where proceedings have been or shall be *duly* commenced in the Surrogate's Court under sections 2750, 2751. It applies, just as in this instance, to cases where such an application has been rendered

impossible because the real estate was swept away by a sale within the three years. And for aught that I can see it also applies to any case of a surplus arising from a sale within four years after the letters. Surely the court in which the foreclosure occurred would be competent to settle all rights of the parties to that action in the surplus. If it was the design of the statute to limit the distribution to them, why then pay it to the Surrogate's Court except for the reason that the administrator was there to protect himself for expenses of administration, the funeral expenses, and to represent general creditors, none of whom would be necessary parties to the foreclosure suit? And, again, it is certain that this money must be distributed under section 2799, and the Surrogate's Court is bound to investigate and settle the "rights and priorities" of interested persons. What priorities are there to settle in such a fund except among classes of creditors under section 2793? We should scarcely think of using that phrase of the right of a creditor over a legatee or heir at law.

I think the decedent's general creditors and funeral expenses ought to have been paid out of this fund, so far as necessary, and that the decree should have provided for such payment. There is no suggestion that any of these claims were barred by the Statute of Limitations, nor do I see how such a suggestion could have been reasonably made.

We, therefore, reverse the decree so far as it relates to appellants, and direct that they shall have their share of the fund, and that their costs of this appeal shall be paid therefrom as a part of the expenses of distribution. The judgment will be without prejudice to any remedy which the other creditors may have, if any.

BARNARD, P. J., and DYKMAN, J., concurred.

Order reversed as to appellants; they to have their share of the fund with costs of appeal as part of the expense of distribution. This judgment to be without prejudice to any remedy which other creditors may have.